```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PETER & ELPIS CONSTANTINIDES    :    CONSOLIDATED UNDER
                                :    MDL 875
     Plaintiffs,                :
                                :
     v.                         :
                                :    CIVIL ACTION
LESLIE CONTROLS, INC., et al.,  :    NO. 09-70613
                                :
     Defendants.                :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                       September 30, 2010

Before the Court is the report and recommendation ("R&R") issued by Chief Magistrate Judge Thomas J. Rueter, and joined by Magistrate Judges David R. Strawbridge and Elizabeth T. Hey ("the Panel"), and Defendant Leslie Controls, Inc.'s objections thereto. The Panel recommends that the Court deny Defendant Leslie Controls, Inc.'s motion for summary judgment.[1] The issue before the Court revolves around product identification.

I. BACKGROUND

Peter Constantinides initiated this action in August 2008 in

---

[1] This case was referred by Order of the Presiding Judge of MDL-875 to a panel of three magistrate judges pursuant to MDL-875 summary judgment procedures regarding issues of causation (product identification), successor liability and settled issues of state law. (See MDL-875 summary judgment procedures, available at www.paed.uscourts.gov/mdl1875y.asp; see also Constantinides v. Alfa Laval, doc. no. 147). In the instant case, the R&R was filed after the Panel heard oral argument on March 24, 2010.

1

the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida, alleging negligence and strict liability claims against several defendants based on their failure to warn of the dangers associated with asbestos exposure. (R&R at 1). The case was subsequently removed the District Court and transferred to the Eastern District of Pennsylvania as part of MDL-875, the consolidated asbestos personal injury multidistrict litigation.

Mr. Constantinides was diagnosed with Mesothelioma in 2007. (R&R at 2). His only lifetime exposure to asbestos occurred during fifteen months while he served in the United States Navy on the U.S.S. Iowa from 1954 to 1956. Id. Mr. Constantinides was employed as a fireman's apprentice and then as a fireman on the U.S.S. Iowa, where one of his main assignments was to work in the boiler room. Id. The boiler room contained numerous pipes and machinery encased in external asbestos insulation and/or containing gaskets and other internal parts which were encased in asbestos. Id.

The record is unclear regarding the precise number of Leslie Controls, Inc. ("Leslie Controls") products were present in the boiler room in which Mr. Constantinides worked. (R&R at 3, n.3). However, the parties appear to agree that there were six Leslie Controls valves present in the boiler room. (Id.; Deposition of Arnold P. Moore, doc. no. 125-6, at 247:7-8; Transcript of Oral

Argument, doc. no. 141, March 2, 2010 at 93).  Mr. Constantinides testified that he occasionally repaired pumps and motors by removing and replacing gaskets and bearings.  (Pl. Video Dep., doc. no. 125-2, 56-59).  Mr. Constantinides testified that his working environment was dusty.  (Discovery Dep., Vol. I, doc. no. 127-2, at 20:8-9).  According to a co-worker, Mr. Harris, Mr. Constantinides spent about 10 days cleaning and scraping the packing from valves and then repacking them, and that he breathed in the dust created by this work.  (Robert L. Harris Dep., doc. no. 125-4, at 11-15, 52, 65).  Plaintiffs' expert testified that Leslie Controls valves were specified for the use of external asbestos insulation.  (Arnold Moore Dep., doc. no. 125-6, at 250, 253-54).

Defendant moved for summary judgment, arguing that Plaintiffs had failed to establish that Leslie Controls products were a cause of Mr. Constantinides's asbestos-related injuries. (Def.'s Mot. Summ. J., doc. no. 103).  The Panel denied Leslie Controls's Motion for Summary Judgment, finding that plaintiffs had raised a genuine issue of material fact as to whether Defendant's products caused Mr. Constantinides's asbestos-related injuries.

Defendant raises objections to three of the Panel's findings.  First, Defendant objects to the finding that, despite Defendant's assertion that its valves were too small to be the

type Mr. Constantinides worked on, there remains a genuine issue of fact as to causation. (Def.'s Objects., doc. no. 168 at 2). Second, Defendant argues that it cannot be held liable for asbestos insulation applied to its products that it neither manufactured nor supplied. (Id. at 2-3). Finally, Defendant objects to the finding that there is a "battle of the experts" regarding the medical causation of Mr. Constantinides's injuries. (Id.).

II. LEGAL STANDARD[2]

Pursuant to 28 U.S.C. § 636(b)(1)(C), "[a] judge of the Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

When evaluating a motion for summary judgment, Federal Rule of Civil Procedure 56 provides that the Court must grant judgment in favor of the moving party when "the pleadings, the discovery

---

[2] In multidistrict litigation, "on matters of procedure, the transferee court must apply federal law as interpreted by the court of the district where the transferee court sits." In Re Asbestos Prods. Liabl. Litig. (No. VI), 673 F. Supp. 2d 358, 362 (E.D. Pa. 2009). On substantive matters, including choice of law rules, the state law of the transferor district applies. Lou Levy & Sons Fashions, Inc. v. Romano, 988 F.2d 311, 313 (2d Cir. 1993). As there is no dispute to the application of Florida law in this case, this Court will apply Florida law.

and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact . . . ." Fed. R. Civ. P. 56(c)(2). A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "genuine" when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact. Id. at 248-49. "In considering the evidence, the court should draw all reasonable inferences against the moving party." El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

"Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by showing-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004) (quoting Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001)). Once the moving party has thus discharged its burden, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in [Rule 56]--set out specific facts showing a genuine issue for trial." Fed. R. Civ.

P. 56(e)(2).

III. DISCUSSION

Pursuant to 28 U.S.C. § 636(b)(1)(C), the Court must apply a de novo standard of review to the portions of the R&R that Westinghouse has objected to. Defendants three objections are addressed ad seriatim.

**A.   There is no evidence that Mr. Constantinides worked on Leslie Valves**

Defendant asserts that it is entitled to summary judgment because the Leslie Valves in the boiler room in which Mr. Constantinides worked were no larger than two and one-half inches in diameter, whereas Mr. Harris testified that the valves he and Mr. Constantinides cleaned were over a foot in diameter. (See Tr. of Oral Arg., doc. no. 141, at 93-94; Affidavit of Thomas McCaffery, doc. no. 103-5 at ¶ 8; Harris Dep., doc. no. 125-4, at 11). Defendant also asserts that there were far fewer Leslie Controls valves than Crane valves in the boiler room. (Tr. of Oral Arg. at 93-97).

The Panel correctly concluded that the factual record on the issue of the size of the pumps is not sufficiently developed to support a grant of summary judgment in Defendant's favor. The Panel concluded that "certain technical aspects of the Leslie

valves themselves remain unclear," particularly that Mr. McCaffery's testimony seems to be referencing the diameter of the pipes connected to Leslie Controls valves, but that there is no evidence on the record establishing the dimensions of the valves themselves. (R&R at 8).

However, the record is clear that Leslie Controls valves were one of only two types of valves in the boiler room in which Mr. Constantinides worked. Plaintiffs have produced expert testimony to the effect that Leslie Controls specified for the use of asbestos gaskets and packing, and that external asbestos insulation was applied to its valves. (Moore Dep. at 250, 253-54). Mr. Moore's testimony that Mr. Constantinides would have likely been present when asbestos gaskets and packing were changed on Leslie Controls valves, combined with Mr. Constantinides's and Mr. Harris's regarding the work performed on valves, is sufficient to raise a genuine issue of material fact as to causation.

**B. Leslie Controls cannot be held liable for asbestos containing products that it did not manufacture, supply, or specify**[3]

---

[3] It appears that Defendant is raising the "bare metal" defense for this first time in its objections to the magistrate judge's report and recommendation. Defendant did not raise this argument in its summary judgment brief, and it is not clear that it is timely raised. However, because this Court has determined that a remand of this entire issue is appropriate, we leave a determination of whether the defense was timely raised to the

7

Defendant asserts that it cannot be held liable for products that it did not manufacture or supply. While many courts hold that it is the responsibility of the manufacturer of the finished product to provide warnings, other courts find that the duty to warn remains when the manufacturer is aware of the risk that its product will pose once incorporated with the defective product. In the instant case, Defendant argues that it cannot be held liable because it did not manufacture or design asbestos-containing products. Rather, asbestos replacement asbestos parts and external asbestos insulation were added to Defendant's products.

The Florida Supreme Court has not addressed the issue of whether a component manufacturer can be held liable for harm caused by a finished product. Defendant urges the Court to look outside of Florida for support that the bare metal defense can, and should, be applied in this case. (Def.'s Mot. Summ. J., doc. no. 99 at 19-25).

Florida appellate courts have taken the approach that a component manufacturer can be held liable for a finished product in certain circumstances. For example, in <u>Scheman-Gonzalez v. Saber Manufacturing Company</u> the court held that the manufacturer of a wheel rim (Titan), which was incorporated into defendant Saber's wheel, could be held liable for injuries occurring when a

---

transferor court.

tire mounted on the wheel exploded. 816 So. 2d 1133 (Fl. Dist. App. Ct. 2002). Titan argued that it was merely a component manufacturer, but the court found a remaining question of fact as to whether Titan was required to warn plaintiff of the danger, whether the warning provided was adequate, and whether Titan's failure was the proximate cause of plaintiff's injuries. Id. at 1141.

However, in Kohler v. Marcotte, the court held that defendant, a mass-producer of engines, could not be held liable for harm caused by a lawnmower which incorporated one of its engines. 907 So. 2d 596 (Fl. Dist. App. Ct. 2005). The court determined that Kohler was entitled to a directed verdict in their favor, as Kohler did not "review the design of the lawn mower for safety." Id. at 598. The Kohler court relied on the Third Restatement of Torts, § 5(b)(1) (1997) which states that a non-defective component provider is subject to liability only if it "substantially participates in the integration of the component into the design." Id. The court emphasized that Kohler produced a "generic" engine that had many potential uses and incorporations. Id. at 599; see also Ford v. International Harvester Co., 430 So. 2d 912 (Fl. Dist. App. Ct. 1983)(holding that whether a component manufacturer is liable turns on trade usage and custom, relative expertise of the supplier and manufacturer, and practicability of the supplier addressing the

9

safety concerns).

Rather than engage in the risky exercise of predicting whether the Florida Supreme Court would adopt the approach of Kohler v. Marcotte and Scheman-Gonzalez, this Court finds that this issue is best left to the transferee court, with superior expertise and familiarity in the application of Florida law.[4]

Therefore, summary judgment on this ground is denied without prejudice, with leave to file in the transferor court.

**C. There is no "battle of the experts" with respect to the medical cause of Mr. Constantinides's injury**

Defendant objects to the Panel's finding that a grant of summary judgment is further precluded by the existence of a "battle of the experts" in this case. Defendant's expert, toxicologist and industrial hygienist, Dr. Paustenbach, determined that the testimony regarding Mr. Constantinides's

---

[4] A multidistrict litigation transferee court has "authority to dispose of a cases on the merits – for example, by ruling on motions for summary judgment." MANUAL FOR COMPLEX LITIGATION § 22.36 (4th ed. 2010) (citing In re Temporomandibular Joint (TMJ) Prods. Liab. Litig., 113 F.3d 1484, 1488 (8th Cir. 1997)). Although the MDL court has such authority, and in the appropriate case the exercise of such authority generally promotes the multidistrict litigation goals of efficiency and economy, there are cases where ruling on summary judgment by the transferee court would not advance the litigation or serve a useful purpose. Id. (citing In Re Orthopedic Bone Screw Prods. Liab. Litig., MDL No. 1014, 1997 WL 109595 at *2 (E.D. Pa. Mar. 7, 1997)). This appears to be such a case, as Florida law is not settled on the merits of Westinghouse's "bare metal" defense.

potential work with Leslie Controls valves was medically insufficient to cause injury.  He surmised that the exposure resulting from replacing asbestos components of the valves in question would have produced an asbestos concentration in the boiler room no greater than found in ambient air.  (Def.'s Objects., doc. no. 168, at 6).

Plaintiffs' expert, Dr. Abraham, opined that, "Mr. Constantinides' asbestos exposure was the cause of his asbestos-related pleural plaques and of his malignant mesothelioma." (doc. no. 125-8).  Defendant asserts that this is a general, speculative statement and is insufficient to raise a genuine issue of material fact.

While it is true that Plaintiffs' expert does not directly controvert Defendant's expert, it is equally true that Defendant's expert report does not independently support a grant of summary judgment in this case.  Rather, the scientific analysis of whether asbestos emitted from Leslie Controls was sufficient to cause injury is evidence to be considered by a jury in evaluating whether Leslie Controls products caused Mr. Constantinides's injuries.

When viewing the record as a whole, and in the light most favorable to Plaintiffs, there remains a genuine issue of material fact as to whether Leslie Controls products caused Mr. Constantinides's injuries.  In the instant case, Mr.

Constantinides's exposure is concentrated in both time and place (2 years working in a boiler room on the U.S.S. Iowa). The record indicates that there were six Leslie Controls valves in that room, and that they contained asbestos gaskets, packing, and insulation. Further, Plaintiffs' experts opined that Mr. Constantinides was likely present while Leslie valves aboard the U.S.S. Iowa were being worked on, and that asbestos exposure was the cause of Mr. Constantinides's injuries. (Moore Dep. at 247-248; (Report of Dr. Abraham, doc. no. 125-8). The record is sufficient to raise a genuine issue of material fact as to whether asbestos components of Leslie Controls valves caused Mr. Constantinides's injuries.

IV. Conclusion

Defendant's objections to the Panel's Report and Recommendation are overruled. There remains a genuine issue of material fact as to whether the asbestos gaskets, packing, and insulation on Leslie Controls Valves in the boiler room of the U.S.S. Iowa were a substantial contributing factor to Mr. Constantinides's asbestos-related injuries.

However, the issue of whether Leslie Controls can be held liable for external asbestos insulation applied to its products is appropriate for adjudication in the transferor court, provided this argument was timely raised.

An appropriate order follows.