IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PETER & ELPIS CONSTANTINIDES | : | CONSOLIDATED UNDER |
| | : | MDL 875 |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | CIVIL ACTION |
| CBS CORPORATION, | : | NO. 09-70613 |
| | : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J. September 30, 2010

Before the Court is the report and recommendation ("R&R") issued by Chief Magistrate Judge Thomas J. Rueter, and joined by Magistrate Judges David R. Strawbridge and Elizabeth T. Hey ("the Panel"), and defendant CBS Corporation's ("Westinghouse") objections thereto. The Panel recommends that the Court deny CBS Corporation's motion for summary judgment.[1]

---

[1] This case was referred by Order of the Presiding Judge of MDL-875 to a panel of three magistrate judges pursuant to MDL-875 summary judgment procedures regarding issues of causation (product identification), successor liability and settled issues of state law. (See MDL-875 summary judgment procedures, available at www.paed.uscourts.gov/mdl1875y.asp; see also Constantinides v. Alfa Laval, doc. no. 147). In the instant case, the R&R was filed after the Panel heard oral argument on March 24, 2010.

I. BACKGROUND

Peter Constantinides initiated this action in August 2008 in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida, alleging negligence and strict liability claims against several defendants based on their failure to warn of the dangers associated with asbestos exposure. (R&R at 1). The case was subsequently removed the District Court and transferred to the Eastern District of Pennsylvania as part of MDL-875, the consolidated asbestos personal injury multidistrict litigation.

Mr. Constantinides was diagnosed with Mesothelioma in 2007. (R&R at 2). His only lifetime exposure to asbestos occurred during fifteen months while he served in the United States Navy on the U.S.S. Iowa from 1954 to 1956. Id. Mr. Constantinides was employed as a fireman's apprentice and then as a fireman on the U.S.S. Iowa, where one of his main assignments was to work in the boiler room. Id. The boiler room contained numerous pipes and machinery encased in external asbestos insulation and/or containing gaskets and other internal parts which were encased in asbestos. Id.

Defendant Westinghouse[2] moved for summary judgment on two

---

[2] CBS Corporation is a Delaware corporation formerly known as Viacom, Inc., and is a successor by merger to CBS Corporation, a Pennsylvania corporation formerly known as Westinghouse Electric Corporation. See doc. no. 99, at 1, n.1. Additionally, B.F. Sturtevant Company was formerly owned by, and operated as a

grounds. First, that plaintiffs had failed to establish causation, and second, that the United States Navy qualifies as a sophisticated purchaser under Florida law. (Def.'s Mot. Summ. J., doc. no. 99, at 2). The Panel denied Westinghouse's Motion for Summary Judgment on causation grounds, finding that plaintiff had raised a genuine issue of material fact as to whether Westinghouse's products caused his asbestos-related injuries. The Panel did not issue a ruling on the bare metal or sophisticated user defenses, as their referral order was limited to issues of causation.

Defendant Westinghouse raises two objections to the Panel's R&R. First, it objects to the Panel's finding that there remains a genuine issue of material fact as to whether the exposure at issue is attributable to Westinghouse products. (Def.'s Objects., doc. no. 154, at 1). Second, Westinghouse objects to the Panel's finding that the record supported a finding that Westinghouse products were the "but for" cause of the injury, as required by Florida law.

Defendant Westinghouse moves for summary judgment on two additional grounds. First, that Westinghouse is not responsible for asbestos insulation that it neither manufactured or applied to products, and second, that the United States Navy was a

---

division of, Westinghouse. Id. For ease of reference, CBS Corporation and B.F. Sturtevant collectively will be referred to as Westinghouse.

sophisticated user of asbestos, thereby breaking the causal chain between Westinghouse and Mr. Constantinides' injuries.

II. LEGAL STANDARD[3]

Pursuant to 28 U.S.C. § 636(b)(1)(C), "[a] judge of the Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

When evaluating a motion for summary judgment, Federal Rule of Civil Procedure 56 provides that the Court must grant judgment in favor of the moving party when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact . . . ." Fed. R. Civ. P. 56(c)(2). A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "genuine" when there is

---

[3] In multidistrict litigation, "on matters of procedure, the transferee court must apply federal law as interpreted by the court of the district where the transferee court sits." In Re Asbestos Prods. Liabl. Litig. (No. VI), 673 F. Supp. 2d 358, 362 (E.D. Pa. 2009). On substantive matters, including choice of law rules, the state law of the transferor district applies. Lou Levy & Sons Fashions, Inc. v. Romano, 988 F.2d 311, 313 (2d Cir. 1993). As there is no dispute to the application of Florida law in this case, this Court will apply Florida law.

4

sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact. Id. at 248-49. "In considering the evidence, the court should draw all reasonable inferences against the moving party." El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

"Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by showing-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004) (quoting Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001)). Once the moving party has thus discharged its burden, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in [Rule 56]--set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

III. DISCUSSION

Pursuant to 28 U.S.C. § 636(b)(1)(C), the Court must apply a de novo standard of review to the portions of the R&R that Westinghouse has objected to.

**A. Objections to the Panel's Report and Recommendations on the Issue of Causation**

Defendants argue that the record is devoid of any evidence that Mr. Constantinides inhaled asbestos fibers from Westinghouse-manufactured products. (Def.'s Objects., doc. no. 154 at 3). Rather, the record merely indicates that he inhaled asbestos that had settled on Westinghouse equipment from overhead pipes. (Id.) Additionally, Westinghouse argues that the Panel failed to correctly apply Florida law, which Defendant argues requires a plaintiff to show that asbestos exposure from Defendant's products (1) was sufficient, standing alone, to cause the injury or (2) that "but for" the Westinghouse-attributable exposure, the injury would not have occurred. (Id. at 4; citing Reaves v. Armstrong World Indus., 569 So.2d 1307, 1309 (Fla. App. 4th Dist. 1990), review denied, 581 So.2d 166 (Fla. 1991)).

The Florida Supreme Court has not articulated a standard of causation necessary to survive summary judgment in asbestos cases, and lower Florida courts have rejected the "frequency, regularity, and proximity" test, which has been adopted in many courts throughout the nation. Rather, under Florida law, a plaintiff must simply show that a defendant's product was a "substantial contributing factor" to the injury that occurred to bring a claim in Florida courts. (Asbestos and Silica Compensation Fairness Act, FLA. STAT. § 774.205). If defendant's products are identified in a given case, "traditional" methods of

finding causation apply. Celotex Corp. v. Copeland, 471 So. 2d 533, 536 (Fla. 1985). The traditional method of establishing causation in negligence cases requires the plaintiff to "introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result." Gooding v. University Hospital Bldg, Inc., 445 So. 2d 1015 (Fl. 1984)(quoting Prosser, Law of Torts § 41 (4th Ed. 1971)).

Therefore, to survive summary judgment under Florida law, a plaintiff must simply raise a genuine issue of material fact as to whether defendant's failure to warn about the hazards of asbestos was "a substantial factor" in bringing about plaintiff's asbestos-related injury. See id.

Expert testimony indicates that the Westinghouse products at issue incorporated internal asbestos-containing gaskets and packing, as well as external asbestos insulation. (Arnold P. Moore Expert Report, doc. no. 137 at 9, 11). Mr. Moore's deposition testimony indicates that external asbestos insulation was added to Westinghouse products subsequent to manufacture, but the record indicates that Westinghouse products contained asbestos gaskets and packing in their original design. (Moore Dep., doc. no. 99-2, at 122-124; Def.'s Mot. Summ. J., doc. no. 99 at 9).

As to internal asbestos gaskets and packing, there remains

no genuine issue of material fact as to whether Westinghouse-
manufactured gaskets and packing were a substantial cause of Mr.
Constantinides's injuries. Plaintiff's own expert testified that
any original Westinghouse gaskets or packing would have been
replaced prior to Mr. Constantinides boarding the U.S.S. Iowa in
1954:

> **Q:** Is it your belief that any packing or gaskets
> used with the forced draft blowers would have been
> replaced prior to Mr. Constantinides' service
> aboard the USS Iowa?
>
> **A:** It's likely that gaskets and packing would have
> been replaced before he reported onboard.
>
> **Q:** And would that be true for the B.F. Sturtevant
> steam turbine that drove the fire and flushing
> pump, that any original gaskets or packing
> supplied with that pump would have been replaced
> prior to Mr. Constantinides' service?
>
> **A:** It is true that any original packing and
> gaskets provided with that steam turbine would
> have been replaced prior to his service on the
> ship.
>
> **Q:** And is the same true for the Westinghouse
> ship's service generators, that any original
> packing or gaskets associated with that equipment
> would have been replaced prior to Mr.
> Constantinides' service?
>
> **A:** It is likely that any original packing and
> gaskets for the Westinghouse turbine driven ship's
> service generators would have been replaced prior
> to his service on the ship. (Arnold P. Moore
> Dep., doc. no. 99-2, at 123;11-124:7).

Plaintiff has advanced no evidence indicating that original
Westinghouse gaskets and packing were incorporated into the

U.S.S. Iowa as of 1954, when Mr. Constantinides began his employment. Even when viewed in a light most favorable to Plaintiffs, the record shows that Mr. Constantinides's injuries were not caused by products that Westinghouse manufactured or supplied to the U.S.S. Iowa.

Therefore, Defendant's objections as to product identification are sustained.

**B. Defendant's Additional Grounds for Summary Judgment**

The question remains whether Defendant can be held liable for asbestos-containing internal components and external insulation that were applied to its products after manufacture. This issue was not before the Panel, and is addressed below.

### 1. The Bare Metal Defense

Defendant asserts that it cannot be held liable for products that it did not manufacture or supply. While many courts hold that it is the responsibility of the manufacturer of the finished product to provide warnings, other courts find that the duty to warn remains when the manufacturer is aware of the risk that its product will pose once incorporated with the defective product. In the instant case, Defendant argues that it cannot be held liable because it did not manufacture or design asbestos-containing products. Rather, asbestos replacement asbestos parts

9

and external asbestos insulation was added to Defendant's forced draft blowers subsequent to manufacture.

The Florida Supreme Court has not addressed the issue of whether a component manufacturer can be held liable for harm caused by a finished product. Defendant urges the Court to look outside of Florida for support that the bare metal defense can, and should, be applied in this case. (Def.'s Mot. Summ. J., doc. no. 99 at 19-25).

Florida appellate courts have taken the approach that a component manufacturer can be held liable for a finished product in certain circumstances. For example, in <u>Scheman-Gonzalez v. Saber Manufacturing Company</u> the court held that the manufacturer of a wheel rim (Titan), which was incorporated into defendant Saber's wheel, could be held liable for injuries occurring when a tire mounted on the wheel exploded. 816 So. 2d 1133 (Fl. Dist. App. Ct. 2002). Titan argued that it was merely a component manufacturer, but the court found a remaining question of fact as to whether Titan was required to warn plaintiff of the danger, whether the warning provided was adequate, and whether Titan's failure was the proximate cause of plaintiff's injuries. <u>Id.</u> at 1141.

However, in <u>Kohler v. Marcotte</u>, the court held that defendant, a mass-producer of engines, could not be held liable for harm caused by a lawnmower which incorporated one of its

10

engines. 907 So. 2d 596 (Fl. Dist. App. Ct. 2005). The court determined that Kohler was entitled to a directed verdict in their favor, as Kohler did not "review the design of the lawn mower for safety." Id. at 598. The Kohler court relied on the Third Restatement of Torts, § 5(b)(1) (1997) which states that a non-defective component provider is subject to liability only if it "substantially participates in the integration of the component into the design." Id. The court emphasized that Kohler produced a "generic" engine that had many potential uses and incorporations. Id. at 599; see also Ford v. International Harvester Co., 430 So. 2d 912 (Fl. Dist. App. Ct. 1983)(holding that whether a component manufacturer is liable turns on trade usage and custom, relative expertise of the supplier and manufacturer, and practicability of the supplier addressing the safety concerns).

Plaintiffs in the instant case point to Florida authority establishing that parties in the chain of distribution have a duty to warn end users of foreseeable or contemplated users of their products. McConnell, 937 So. 2d at 154. Plaintiffs assert that, because Defendant's product required insulation to operate safely and because expert testimony indicates that "asbestos was the primary material used for - particularly for insulation during the war," Defendant had a duty to warn the end user of the hazards of asbestos. (Dep. of Arnold Moore, doc. no. 129-5, at

150:3-7). Plaintiffs have produced evidence that Defendant was aware that asbestos insulation would be applied, and that Naval Specifications included a choice between using asbestos and non-asbestos gaskets and packing. (Id.; Moore Dep., doc. no. 129-5, at 171:5-9).

Rather than engage in the risky exercise of predicting whether the Florida Supreme Court would adopt the approach of Kohler v. Marcotte and Scheman-Gonzalez, this Court finds that this issue is best left to the transferee court, with superior expertise and familiarity in the application of Florida law.[4]

Therefore, summary judgment on this ground is denied without prejudice, with leave to file in the transferor court.

2. The Sophisticated Purchaser Defense

Additionally, Defendant argues that, under Florida law, it

---

[4] A multidistrict litigation transferee court has "authority to dispose of a cases on the merits – for example, by ruling on motions for summary judgment." MANUAL FOR COMPLEX LITIGATION § 22.36 (4th ed. 2010) (citing In re Temporomandibular Joint (TMJ) Prods. Liab. Litig., 113 F.3d 1484, 1488 (8th Cir. 1997)). Although the MDL court has such authority, and in the appropriate case the exercise of such authority generally promotes the multidistrict litigation goals of efficiency and economy, there are cases where ruling on summary judgment by the transferee court would not advance the litigation or serve a useful purpose. Id. (citing In Re Orthopedic Bone Screw Prods. Liab. Litig., MDL No. 1014, 1997 WL 109595 at *2 (E.D. Pa. Mar. 7, 1997)). This appears to be such a case, as Florida law is not settled on the merits of Westinghouse's "bare metal" defense.

is not liable for asbestos-related injuries because the United States Navy knew of the risks of asbestos. This so-called "sophisticated user defense" arises under §388 of the Second Restatement of Torts, which has been adopted by Florida. <u>Tampa Drug Co. v. Wait</u>, 103 So. 2d 603 (Fla. 1958); <u>McConnell v. Union Carbide Corporation</u>, 937 So. 2d 148 (Fl. Dist. App. Ct. 2006).

Under the Second Restatement's approach, whether a sophisticated purchaser discharges a manufacturer's duty to warn depends on numerous factors, including (1) the dangerous nature of the product (2) the form in which it is used (3) the type of warnings given (4) the burden imposed and (5) the likelihood that the warnings will be adequately communicated to the foreseeable users of the product. <u>Union Carbide Corporation v. Kavanaugh</u>, 879 So. 2d 42, 45 (Fl. Dist. App. Ct. 2004).

In the asbestos context, Florida appellate courts have held that, because of the "intrinsically dangerous" nature of asbestos, the supplier of an asbestos-containing product may not be able to rely on its intermediaries to pass along a warning. <u>McConnell</u>, 937 So. 2d at 149. In <u>McConnell</u>, the court held that "[t]here is almost no burden in imposing on [suppliers of asbestos] the duty of contractually requiring its 'learned intermediaries' . . . to affix to the end product an indelible warning of the existence of asbestos in it and the very serious dangerous in using it without proper precautions." 937 So. 2d at

13

155. Instead, juries should be instructed to take into account the balancing test employed by the Second Restatement, and it is not an automatic bar to liability that an intermediary knew of the hazards of a product.[5]  Id. at 156; see also Kavanaugh, 879 So. 2d 42, 45 (finding that "because [asbestos supplier] did not take reasonable precautions under the circumstances, its duty to warn did not stop with [the intermediary], but continued to the ultimate user."); see also Sowell v. American Cyanamid Co., 888 F.2d 802 (11th Cir. 1989)(holding that defendant was not absolved of liability for an exploding tank supplied to the United States Navy, even though defendant gave the Navy a manual; a reasonable jury could conclude that this was insufficient to protect end users).

Generally speaking, under Florida law, "[q]uestions of whether a product is inherently dangerous or has dangerous propensities and whether a manufacturer or distributor has a duty to warn under the circumstances are usually questions of fact for the jury." Advance Chemical Co. V. Harter, 478 So.2d 444-48 (Fl.

---

[5] The Second Restatment of Torts, § 388, comment n makes clear that the degree of dangerousness of a product is an essential part of whether the duty to warn continues to the end user.  The comment states, "[I]t may be reasonable to require those who supply through others chattels which if ignorantly used involve grave risk of serious harm to those who use them . . . to take precautions to bring the information home to the users of such chattels which it would be unreasonable to demand were the chattels of a less dangerous character."

Dist. Ap. Ct. 1985).

Defendants point to Florida Supreme Court precedent holding that it is "contrary to public policy as well as good common sense" to hold a manufacturer strictly liable when the defect is known to an intermediary. <u>Chadbourne v. Vaughn</u>, 491 So. 2d 551 (Fl. 1986). In <u>Chadbourne</u>, the Supreme Court of Florida declined to hold a roadway constructor liable when "a highly knowledgeable and sophisticated purchaser [the Florida Department of Transportation] extensively tested and examined the finished roadway consistent with state procedures." <u>Id.</u> at 553. The Court found that, under these circumstances, the paver of the road was not "proximately responsible" for plaintiff's injuries. <u>Id.</u>

<u>Chadbourne</u> is distinguishable from the instant case on at least two grounds. One, it was a design defect, not a failure to warn case and two, the Florida Supreme Court determined that the constructed roadway "was not a product for purposes of the application of strict liability." <u>Id.</u> at 553. In the instant case, based on the decisions in <u>McConnell v. Union Carbide Corporation</u> and <u>Union Carbide Corporation v. Kavanaugh</u>, the question presented is whether a sophisticated purchaser of an inherently dangerous product cuts off the supplier's duty to warn end users of the hazards.

Under the circumstances present here, the weight of

15

authority from Florida courts indicates that whether a manufacturer's duty to warn is discharged by an intermediary is a factual question for the jury, and involves a weighing of numerous factors. Therefore, summary judgment is not appropriate.

IV. Conclusion

Defendant's objections to the Panel's Report and Recommendation regarding the lack of evidence implicating Westinghouse-manufactured asbestos products is sustained. There is no genuine issue of material fact as to whether Westinghouse manufactured or supplied the internal asbestos gaskets and packing to which Mr. Constantinides was exposed.

However, the issue of whether Westinghouse can be held liable for replacement asbestos packing and gaskets and external asbestos insulation applied to its products is appropriate for adjudication in the transferor court.

Finally, the transferor court finds that, if Westinghouse can be held liable for replacement and additional asbestos components of its products, there remains a genuine issue of material fact as to whether Westinghouse's duty to warn was absolved by the United States Navy.

An appropriate order follows.